UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SARAH B. NIXON, | ) |
| | ) |
| Plaintiff/Counterclaim Defendant, | ) |
| | ) |
| v. | ) Case No. 4:09-CV-01896-DJS |
| | ) |
| ENTERPRISE CAR SALES COMPANY | ) |
| | ) |
| Defendant/Counterclaim Plaintiff. | ) |

**MEMORANDUM IN SUPPORT OF
ENTERPRISE'S MOTION TO COMPEL**

**I. INTRODUCTION**

This lawsuit involves Nixon's purchase of a used car from Enterprise, Enterprise's attempted assignment of Nixon's loan, and ultimately Enterprise's servicing of the loan. Enterprise seeks an order compelling Nixon to provide basic information and documents relevant to the parties' dispute, including: (1) documents regarding Nixon's gross monthly income for a reasonable period of time surrounding the transaction; (2) authorizations for the release of Nixon's credit bureau records to Enterprise; and, (3) information and documents relating to Nixon's alleged damages. Accordingly, Enterprise requests that this Court enter an Order overruling Nixon's objections and directing Nixon to answer fully Enterprise's interrogatories and produce all relevant documents, as detailed herein.

**II. FACTUAL BACKGROUND**

On or about February 10, 2009, Nixon filled out a credit application (the "Credit Application") and submitted it to Enterprise with the intent of purchasing a car. See First Amended Complaint [DN 27] (the "Complaint"), at ¶ 9. Subsequently, Nixon purchased a 2008 Pontiac Grand Prix (the "Vehicle") on February 13, 2009. Id. at ¶ 8. This transaction is

documented by a Vehicle Buyer's Order ("VBO") and Retail Installment Contract ("RIC"), both executed by Nixon and Enterprise. Id., at ¶¶ 8, 12, and Exs. 1 and 2 to the Complaint. The RIC contemplates assignment of the loan by Enterprise. In the context of that assignment, Nixon, by executing the Credit Application, authorized third party lenders to pull her credit report.

As contemplated by the RIC, Enterprise attempted to assign the loan to CitiFinancial Auto ("Citi"), an original defendant in this lawsuit. See Enterprise's Counterclaim [DN 40], at ¶ 23. Citi rejected the assignment. Citi's stated reason for the rejection was that it could not substantiate the income listed by Nixon on the Credit Application. Id., at ¶ 24. Enterprise attempted to work with Nixon to remedy the situation, i.e., it asked Nixon to provide documentation of the income listed in the Credit Application and attempted to rework the deal around Nixon's actual income. Enterprise even attempted to assign the RIC to other financial institutions for approval. See Complaint, at ¶ 20. Those attempts failed as well. Enterprise was ultimately forced to service the loan at its own cost and expense. See Counterclaim, at ¶ 46.

In the Complaint, Nixon purports to assert claims against Enterprise for violations of the Fair Credit Reporting Act ("FCRA") and Missouri Merchandising Practices Act ("MMPA"). See Complaint, Count I and II, ¶¶ 21-34. Nixon alleges that Enterprise's pulling of Plaintiff's credit report for the second time caused Nixon actual damages, although the nature of those damages are undescribed. Id. at ¶¶ 24, 26. Nixon also alleges that she suffered damages to her credit reputation when Enterprise and third party lenders pulled her credit report. Id. at ¶ 31(e).

In its Counterclaim, Enterprise alleges that Nixon breached the VBO and RIC by failing to make the downpayment called for by the contracts and by failing to make timely monthly payments due under the contracts. See Counterclaim, at ¶ 35. Enterprise further alleges that Nixon misrepresented her gross monthly income in the Credit Application, upon which

Enterprise relied in permitting Nixon to take conditional delivery of the Vehicle and in executing the VBO and RIC. Id. at ¶¶ 38, 40. Enterprise alleges that it was (and continues to be) damaged because it was unable to assign the RIC as a result of Nixon's misrepresentations and failure to cooperate, forcing Enterprise to independently service a loan that is now in default. Id. at ¶ 46.

Against this background, several issues are germane to the parties' respective claims in this lawsuit, including but not limited to: (1) Nixon's income for a reasonable period of time surrounding the Credit Application; (2) Nixon's credit history and details surrounding the pulling of her credit report; and, (3) Nixon's alleged damages.

Enterprise served interrogatories and initial document requests on August 26, 2010. See Ex. 1 (transmittal email and certificate of service). Contemporaneously, Enterprise provided authorizations to Nixon so that Enterprise could collect Nixon's tax returns and credit bureau records for a reasonable period of time.

Nixon responded to this discovery with generalized, boilerplate objections and evasive, incomplete answers. See Ex. 2 (Responses to Enterprise's First Requests for Production of Documents) and Ex. 3 (Answer to Enterprise's First Set of Interrogatories). Nixon has attempted to create an appearance of compliance, either providing some information (in response to interrogatories) or some of the requested documents. But Nixon's document production is incomplete, and there are gaps in the documents she did produce. Nixon also refused to return authorizations for the collection of tax returns or credit bureau authorizations.

Consistent with the meet-and-confer requirements of Local Rule 37 – 3.04, undersigned counsel provided Nixon's counsel with a letter detailing the deficiencies in Nixon's responses and document production. See Ex. 4 (November 5, 2010 Letter from M. Guletz to M. Stoddard). Enterprise requested that Nixon timely supplement her responses and document production by

November 15, 2010, so that Enterprise could proceed with depositions. Id. Alternatively, undersigned counsel requested that Nixon's counsel contact undersigned counsel before November 15 to discuss the disputed issues. Enterprise received no response.

Again hoping to avoid the involvement of this Court and the expenses inherent in filing a motion to compel, undersigned counsel sent Nixon's counsel another email on November 15, 2010. See Ex. 5. In that email, Enterprise reattached the meet-and-confer letter and asked Nixon's counsel to confirm that Plaintiff did not intend to supplement her discovery responses so that Enterprise would not unnecessarily incur the expense of filing a motion to compel. Id. Another week passed with no response. Unable to resolve the disputed issues with Nixon, Enterprise files the instant motion. As required by Local Rule 37 – 3.04, undersigned counsel certifies that he made several efforts to confer with opposing counsel on November 5 and 15 to resolve this discovery dispute. See Exs. 4 and 5. Those meet-and-confer attempts were ignored.

## III. ARGUMENT

### A. Nixon Should Be Compelled To Produce Documents And Answer Interrogatories Regarding Her Gross Monthly Income For A Reasonable Period Of Time (Interrogatories 11 and 14 and Requests 20, 21, 27, and 28).

Nixon listed her gross monthly income ($3,900) in the Credit Application and certified its truth. Enterprise relied on this figure in executing the VBO and RIC and permitting Nixon to take conditional delivery of the Vehicle. The figure is also relevant to Enterprise' attempts to assign the RIC, and the repeated refusal by lenders to fund the loan. These problems led to Enterprise's pulling of Nixon's credit report for a second time and Enterprise's independent servicing of the loan, *i.e.*, events at the crux of both the Complaint and the Counterclaim.

Despite the relevance of this issue, Nixon denies Enterprise adequate discovery into her gross monthly income. Nixon admits that she listed gross monthly income of $3,900 on the

Credit Application. See Ex. 3 (Interrogatory No. 8). Nixon claims $177 of that figure came from child support. Id. Nixon also admits that she had no other source of income. Id. (Interrogatory No. 11). The scattered documents that Nixon did produce reveal that she is not a salaried employee. Apparently, her base pay was $11.69 an hour. See Ex. 3 (Interrogatory No. 10). While Nixon did produce a couple pay stubs, they reveal that Nixon's income varied significantly from check to check, a product of overtime and holiday pay.

As detailed in Enterprise's meet-and-confer letter, however, the pay stubs that Nixon did produce illustrate that her gross employment income was $2,695.24 in February 2009, the month in which she purchased the Vehicle. Because Nixon produced a pay stub from the last week in 2009, it also appears that Nixon's gross monthly income in 2008 was approximately $2,829.34.

Clearly, these documents suggest that Nixon misrepresented her gross monthly income on the Credit Application, perhaps by as much 50% (from $2,600 to $3,900). But Enterprise does not want to rely, to its detriment, on a snapshot of Nixon's employment income. Rather, it is entitled to a full picture of Nixon's gross monthly income, including employment income and child support payments actually received, over a reasonable period of time. While Nixon produced a copy of her child support order, she did not produce any information or documents evidencing the child support that Nixon *actually received*. Thus, Enterprise cannot test this portion of her alleged gross monthly income either.

There are at least three options for Enterprise to gain full information regarding Nixon's income, all of which Enterprise provided to Nixon:

(1) **Tax Returns**: Enterprise requested production of Nixon's federal and state income tax returns since 2007. See Ex. 2 (Document Request 27). Nixon refused to provide these authorizations on the basis of a host of general, boilerplate objections. Id. Enterprise also asked

that Nixon execute an authorization for it to request a copy of Nixon's tax return. But Nixon refused to provide that authorization as well. See Ex. 2 (Document Request 28).

(2) **Bank Records**: Another option is the production of records of the bank account into which Nixon deposited her employment earnings and child support payments. See Ex. 3 (Interrogatory No. 14 (requesting identification of bank accounts into which employment income was deposited since January 1, 2008)). But Nixon refuses to provide this information based on a host of general, boilerplate objections. Id.

(3) **Payment Receipts**: Finally, Enterprise requested that Nixon provide the documents evidencing the employment and child support income actually received, specifically: (a) pay stubs, checks, or account statements substantiating Nixon's gross monthly income for a reasonable period of time (Ex. 2, Document Request 17), and, (b) details regarding the amount of child support received (Ex. 3, Interrogatory No. 11) or the documents, account statements, or checks demonstrating the child support received (Ex. 2, Document Request 20). While Nixon produced a handful of pay stubs that give a partial look into her employment income, she refused to produce any details or documents regarding the child support payments received.

This Court has ordered the production of tax returns where earnings or wages are at issue. See e.g. Sowers v. Gatehouse Media Missouri Holdings, Inc., No. 4:08CV633 TIA, 2009 WL 1106946, *2 (E.D. Mo. Apr. 23, 2009) (granting motion to compel production of tax returns because they were evidence of party's earnings and were relevant to the issues in dispute); Storie v. U.S., 142 F.R.D. 317, 320 (E.D. Mo. 1991) (granting motion to compel in part because defendant "should be entitled to receive tax returns for a limited relevant period of time.").

The tax returns are clearly relevant. Enterprise has a compelling need for the tax returns because Nixon has not offered any other documents that demonstrate a complete picture of her

income. Nor has Nixon offered Enterprise a less intrusive means of testing her income, *i.e.,* bank records, child support payment receipts, or all pay stubs. Because Nixon has not provided another source from which the complete information (not the partial disclosure made by Nixon) is readily obtainable, tax returns are the best evidence of Nixon's actual gross income. Therefore, Enterprise seeks an order compelling Nixon to produce her tax returns since January 1, 2008 and executing the release provided by Enterprise for release of her tax returns. Alternatively, Enterprise asks that this Court to order Nixon to produce all of her employment pay stubs since January 1, 2008, together with any records detailing the child support payments actually received since January 1, 2008. Nixon should also answer Interrogatory No. 11 detailing the total amount of child support payments actually received since January 1, 2008.

> **B.  Nixon Should Be Compelled To Produce Authorizations For Release Of Her Credit Bureau Records (Document Request 28).**

The Complaint alleges that Enterprise violated the FCRA by obtaining Nixon's credit report for a second time. See Complaint, Count I. Nixon alleges Enterprise's action caused her damage. Id. at ¶¶ 27-8. The Complaint further alleges that Enterprise submitted Nixon's credit application to other financing companies, which also pulled Nixon's credit report and further damaged her credit reputation. Id., at ¶ 31(e).

Despite alleging that Enterprise pulled Nixon's credit report without a permissible purpose and that Enterprise's actions allegedly damaged Nixon's credit reputation, for which she seeks monetary damages, Nixon refuses to provide Enterprise with executed authorizations for Enterprise to obtain credit bureau records from the three credit reporting agencies. Nixon does so solely on the basis of the conclusory and boilerplate objections that the request for such authorizations is "harassing, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence." See Ex. 2 (Document Request 28).

Nixon's objections are meritless. Enterprise is entitled to conduct discovery regarding Nixon's full consumer credit report and the alleged impact, if any, that the events at issue had on her credit score and reputation. How can Enterprise determine if Nixon's credit score declined or if there was any other adverse impact on her credit reputation if it cannot even access Nixon's credit report? This Court should summarily overrule Nixon's boilerplate objections and order her to produce executed copies of the authorizations served with Enterprise's discovery.

### C. Nixon Should Be Compelled To Answer Interrogatories Regarding Her Alleged Damages (Interrogatories 20 & 22).

Enterprise asked Nixon to itemize her damages, including her credit reputation damages. See Ex. 3, ¶¶ 20, 22. Nixon's response: "Undetermined. Will supplement at a later date." Id.

The transaction at issue in this case occurred over twenty months ago. This lawsuit was filed over a year ago. Yet, Nixon still cannot articulate the nature of her damages. This response is all the more curious in light of Nixon's statement in her Initial Disclosures that she believed $50,000, plus punitive damages, would adequately compensate her for her damages. Enterprise is entitled to more at this stage of the case. This Court should order Nixon to supplement her responses to Interrogatory Nos. 20 and 22.

### D. Nixon's Boilerplate Objections Should Be Overruled.

In the discovery requests detailed herein, Nixon lodges generic and boilerplate objections. See Ex. 2, ¶¶ 20, 21, 27, and 28; Ex. 3, ¶ 11, 14, 20, and 22. The objections include the fact that the requests are "vague and overbroad," invasive of the "mental impressions of counsel," "harassing," and "overbroad." Id. No further explanation is given.

Nixon's objections are inconsistent with the federal rules and this Court's local rules. See FED. R. CIV. P. 33(b)(4); FED. R. CIV. P. 34(b)(4); and Local Rule 37 – 3.04(c) ("Upon the filing of a motion to compel, the Court may summarily overrule an objection to any discovery

request if the objection is not stated in detail."). As provided in the local rules, this Court should overrule Nixon's generic objections and order Nixon to respond fully to Interrogatories numbered ¶¶ 11, 14, 20, and 22, as well as produce all documents being withheld in reliance on such objections, including documents responsive to Requests numbered ¶¶ 20, 21, 27, and 28. Unless and until these objections are overruled, Enterprise has no means of determining what information or documents responsive to Enterprise's discovery requests are being withheld.

## IV. CONCLUSION

Enterprise respectfully submits that this Court should enter an Order compelling Nixon, within ten (10) days of the Court's Order, to fully respond to Enterprise's First Set of Interrogatories, produce all remaining documents responsive to Enterprise's First Set of Requests for Production of Documents, and for any such other relief as the Court deems just and proper.

Respectfully submitted,

THOMPSON COBURN LLP

By:/s/Matthew D. Guletz
Christopher M. Hohn, #44124MO
Matthew D. Guletz, #57410MO
One US Bank Plaza
St. Louis, MO  63101
(314) 552-6000
(314) 552-7000 (fax)
chohn@thompsoncoburn.com
mguletz@thompsoncoburn.com

*Attorneys for Defendant/Counterclaim Plaintiff
Enterprise Leasing Company of STL, LLC*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that a true copy of the foregoing was filed electronically with the Clerk of the Court to be served via operation of the Court's electronic filing system this 19th day of November, 2010, to the following:

Mitchell B. Stoddard
Consumer Law Advocates
11330 Olive Blvd., Ste. 222
St. Louis, MO 63141

*Attorney for Plaintiff/Counterclaim Defendant*

                                       /s/ Matthew D. Guletz